White, J.
I do not concur. I admit the conclusion of the court may be justified by a strict adherence to the letter of the third section of the act; but such adherence, it seems to me, sacrifices the intent of the second section as-amended. The act should not be construed according to-the strict letter, but according to what is its true meaning. The intent should be preserved, though it be expounded differently from the letter.
The object of amending the second section was to put bridges of the description named, which had become-dangerous to public travel, and the restoration of which was necessary for the public accommodation, upon the-same footing, in respect to the authority of the commissioners to repair or rebuild them, as like bridges destroyed by casualty.
A bridge forming part of an important public highway,, which has become dangerous to public travel, ceases to accomplish the only purpose for which it was designed. In legislative contemplation, it is regarded for public purposes-as a destroyed bridge. A casualty may, at any moment,, destroy it, and the commissioners are not required to await' the happening of the casualty before taking action to guard against it. Under the prescribed conditions, they may anticipate the casualty, and exercise the same authority for repairing or rebuilding the bridge as if its destruction had occurred.
*503 Considering the mischief the amendment was intended to remedy, the plain implication is that like power was intended to be given in either case; and where the intent is thus to be implied, it should have the same effect as if it had been expressed. Qui heeret in litera, heeret in cortice.
The fact that the bridge constitutes part of one of the important public highways, was deemed by the legislature sufficient ground for not submitting the question of the policy of. the improvement to the vote of the county.